Spencer C. Skeen CA Bar No. 182216
spencer.skeen@ogletree.com
Eric M. Fox CA Bar No. 274132
eric.fox@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
4660 La Jolla Village Drive, Suite 900
San Diego, CA 92122
Telephone: 858-652-3100
Facsimile: 858-652-3101

Attorneys for Defendants CAREFUSION RESOURCES, LLC and BECTON, DICKINSON AND COMPANY

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

JESSICA MENDEZ, an individual, on behalf of herself and on behalf of all persons similarly situated,

Plaintiff,

v.

CAREFUSION RESOURCES, LLC a Delaware Corporation; BECTON DICKINSON AND COMPANY, a New Jersey Corporation, and does 1-50, inclusive,

Defendants.

Case No. '25CV1691 TWR MMP

**DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION PURSUANT TO 28 U.S.C. §§ 1441 AND 1446**

[*Civil Cover Sheet, Notice of Interested Parties, Declaration of Eric Fox, Declaration of Jaime Serrano, Declaration of Lana Aiello, Becton, Dickinson and Company's Corporate Disclosure Statement, and CareFusion's Corporate Disclosure Statement filed concurrently herewith*]

Complaint Filed: May 20, 2025

# TABLE OF CONTENTS


I. THE STATE COURT ACTION ..... 1

II. THE REMOVAL IS TIMELY ..... 2

III. III. VENUE ..... 2

IV. REMOVAL IS PROPER UNDER CAFA ..... 2

- A. CAFA's Diversity of Citizenship Requirement Is Satisfied ..... 3
- B. CAFA's Class Size Requirement Is Satisfied ..... 4
- C. C. CAFA's $5 Million Amount In Controversy Requirement Is Satisfied ..... 4
  - 1. Alleged Minimum Wage Violations ..... 5
  - 2. Alleged Unpaid Overtime Wages ..... 6
  - 3. Alleged Meal Break Violations ..... 8
  - 4. Alleged Rest Break Violations ..... 9
  - 5. Alleged Wage Statement Penalties ..... 9
  - 6. Alleged Failure to Reimburse ..... 10
  - 7. Alleged Waiting Time Penalties ..... 10
  - 8. Attorney's Fees ..... 11
  - 9. Summary ..... 12

V. DEFENDANTS HAVE SATISIFED THE REMAINING REMOVAL REQUIREMENTS ..... 12

VI. CONCLUSION ..... 13

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Andrade v. Beacon Sales Acquisition, Inc.*,
2019 WL 4855997 (C.D. Cal. Oct. 1, 2019) .......... 7

*Baker v. Propak Logistics, Inc.*,
2019 WL 4168998 (C.D. Cal. Sept. 3, 2019) .......... 9

*Bradford v. Bank of Am. Corp.*,
2015 WL 5311089 (C.D. Cal. Sept. 10, 2015) .......... 3

*Byrd v. Masonite Corp.*,
2016 WL 2593912 (C.D. Cal. May 5, 2016) .......... 6

*Campbell v. Vitran Exp., Inc.*,
471 Fed. Appx. 646 (9th Cir. 2012) .......... 8

*Cavada v. Inter-Continental Hotels Group, Inc.*,
2019 WL 5677846 (S.D. Cal. Nov. 1, 2019) .......... 7

*Evers v. La-Z Boy Inc.*,
2022 WL 2966301 (S.D. Cal. July 27, 2022) .......... 10

*Falk v. Children's Hospital Los Angeles*,
237 Cal.App.4th 1454 (2015) .......... 9

*Garibay v. Archstone Communities LLC*,
539 F. App'x 763 (9th Cir. 2013) .......... 11

*Gipson v. Champion Home Builders, Inc.*,
2020 WL 4048503 (E.D. Cal. July 20, 2020) .......... 10

*Henry v. Cent. Freight Lines, Inc.*,
692 F. App'x 806s (9th Cir. 2017) .......... 4

*Hertz Corp. v. Friend*,
130 S. Ct. 1181 (2010) .......... 3

*Jessica Mendez v. CareFusion Resources, LLC, et al.*,
Case No. 25CU026069C .......... *passim*

*Kastler v. Oh My Green, Inc.*,
2019 WL 5536198 (N.D. Cal. Oct. 25, 2019) .......... 6

*Kincaid v. Educ. Credit Mgmt. Corp.*, 2022 WL 597158 (E.D. Cal. Feb. 28, 2022) .......... 6

*Lew v Moss*, 797 F.2d 747 (9th Cir. 1986) .......... 3

*Mackall v. Healthsource Glob. Staffing, Inc.*, 2016 WL 4579099 (N.D. Cal. Sept. 2, 2016) .......... 8

*Mendoza v. Nat'l Vision, Inc.* (2019) .......... 9

*Pineda v. Bank of America, N.A.*, 50 Cal. 4th 1389 (2010) .......... 11

*Rivera v. Agreserves, Inc.*, 2023 WL 5202575 (Aug. 14, 2023) .......... 7

*Rwomwijhu v. SMX, LLC*, No. CV1608105ABPJWX, 2017 WL 1243131 (C.D. Cal. Mar. 3, 2017) .......... 11

*Sanchez v. Russell Sigler, Inc.*, No. CV1501350ABPLAX, 2015 WL 12765359 (C.D. Cal. Apr. 28, 2015) .......... 12

*Shachno v. Marriott International, Inc.*, 2023 WL 316367 (S.D. Cal. Jan. 19, 2023) .......... 10

*Soto v. Greif Packaging*, LLC, 2018 WL 1224425 (C.D. Cal. Mar. 8, 2018) .......... 6

*Soto v. Tech Packaging, Inc.*, 2019 WL 6492245 .......... 6

*Standard Fire Insurance Co. v. Knowles*, 133 S.Ct. 1345 (2013) .......... 4

*Stanley v. Distrib. Alts., Inc.*, 2017 WL 6209822 (C.D. Cal. Dec. 7, 2017) .......... 8

*Torrez v. Freedom Mortgage, Corp.*, 2017 WL 2713400 (C.D. Cal. Jun. 22, 2017) .......... 7

*Unutoa v. Interstate Hotels & Resorts, Inc.*, 2015 WL 898512 (C.D. Cal. Mar. 3, 2015) .......... 8

*Vallejo v. Sterigenics U.S. LLC*, 2021 WL 2685348 (S.D. Cal. June 29, 2021) .......... 10

**Statutes and Other Authorities**

28 U.S.C. §84(c)(2) .......... 2

28 U.S.C. § 1332(c) .......... 3

28 U.S.C. § 1332(c)(1) .......... 3

28 U.S.C. § 1332(d) .......... 1, 2, 4, 5

28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B), 1453(a), (b) .......... 3

28 U.S.C. § 1441(a) .......... 2

28 U.S.C. § 1446 .......... 2

28 U.S.C. §1446(a) .......... 12

28 U.S.C. §1446(b) .......... 12

28 U.S.C. §1446(d) .......... 12

Business and Professions Code §17200, et seq. A .......... 1

Class Action Fairness Act ("CAFA") .......... *passim*

Cal. Code Civ. Proc. § 340(a) .......... 9

California Code of Civil Procedure § 382 .......... 4

California Labor Code §§ 201-203 .......... 10

California Labor Code § 203 .......... 11

California Labor Code § 510 .......... 6

Labor Code §§201, 202 and 203 .......... 1

Labor Code §226 .......... 1, 9

Labor Code §226.7 ..... 1

Labor Code §§510 and 1194 ..... 1

Labor Code §§512 and 226.7 ..... 1

Labor Code §§1194 and 1197 ..... 1

Labor Code Section 1194(a) ..... 5

Private Attorneys General Act ("PAGA") ..... 2, 12

**TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HER COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that Defendants CAREFUSION RESOURCES, LLC ("CareFusion") and BECTON, DICKSONSON AND COMPANY ("BD") (collectively "Defendants"), hereby remove this action from the Superior Court of the State of California, County of San Diego, to the United States District Court for the Southern District of California under 28 U.S.C. § 1332(d) (Class Action Fairness Act ["CAFA"]).

As set forth herein, removal is proper because: (1) Plaintiff and other members of the putative class are citizens of a state different from any defendant; (2) the number of members of the putative class is over 100; and (3) the matter in controversy exceeds the sum or value of $5 million, exclusive of interest and costs. All CAFA requirements are satisfied.

## I. <u>THE STATE COURT ACTION</u>

1. On May 20, 2025, Plaintiff filed a Complaint in the Superior Court of California, County of San Diego captioned *Jessica Mendez v. CareFusion Resources, LLC, et al.*, Case No. 25CU026069C ("Action"). The Complaint purports to assert claims against Defendants for: (1) Failure to Pay Wages for All Hours Worked at Minimum Wage in Violation of Labor Code §§1194 and 1197; (2) Failure to Pay Overtime Wages for Daily Overtime Worked and/or Failure to Pay Overtime Wages at the Proper Overtime Rate of Pay in Violation of Labor Code §§510 and 1194; (3) Failure to Authorize or Permit Meal Periods in Violation of Labor Code §§512 and 226.7; (4) Failure to Authorize or Permit Rest Periods in Violation of Labor Code §226.7; (5) Failure to Provide Complete and Accurate Wage Statements in Violation of Labor Code §226; (6) Failure to Timely Pay All Earned Wages and Final Paychecks Due at Time of Separation of Employment in Violation of Labor Code §§201, 202 and 203; and (7) Unfair Business Practices, in Violation of Business and Professions Code

§17200, et seq. A true and correct copy of the Complaint is attached as **Exhibit 1**. Declaration of Eric Fox ("Fox Decl."), ¶ 2.)

2. Both CareFusion and BD were served with the Complaint on or around June 4, 2025. (Fox Decl., ¶ 2.)

## II. THE REMOVAL IS TIMELY

3. The Notice of Removal was filed within 30 days of service. So, the Notice of Removal is timely. *See* 28 U.S.C. § 1446.

## III. III. VENUE

4. The Superior Court of California, County of San Diego, is within the territory of the Southern District of California. Therefore, venue for removal is proper under 28 U.S.C. §84(c)(2) because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

## IV. REMOVAL IS PROPER UNDER CAFA

5. CAFA grants district courts original jurisdiction over civil class action lawsuits filed under federal or state law in which any member of a class of plaintiffs is a citizen of a state different from any defendant; the number of members of the proposed class is over 100 in the aggregate; and where the matter in controversy exceeds the sum or value of $5 million, exclusive of interests and costs. 28 U.S.C. § 1332(d). CAFA allows removal of such actions under 28 U.S.C. § 1446.

6. Removal is proper given Plaintiff's allegations and claims. The Complaint asserts these claims on a class basis: (1) Unfair Competition; (2) Failure to Pay Minimum Wages; (3) Failure to Pay Overtime Wages; (34 Failure to Provide Meal Breaks; (5) Failure to Provide Rest Breaks; (6) Failure to Provide Accurate Wage Statements; (7) Failure to Reimburse Employees; (7) Failure to Timely Pay Final Wages; and (8) Violations of the Private Attorneys General Act ("PAGA").

7. This Court has jurisdiction over the Action under CAFA because it is a civil case filed as a class action wherein at least one member of the putative class of plaintiffs is a citizen of a state different from a Defendant; the number of potential

class members is over 100; and the matter in controversy exceeds $5 million, exclusive of interest and costs.

**A. CAFA's Diversity of Citizenship Requirement Is Satisfied**

8. CAFA's diversity requirement is satisfied "so long as 'any member of a class of plaintiffs is a citizen of a state different from any defendant.'" *Bradford v. Bank of Am. Corp.*, 2015 WL 5311089, at *3 (C.D. Cal. Sept. 10, 2015); citing, *California v. InelliGender, LLC*, 771 F.3d 1169, 1172 (9th Cir. 2014); 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B), 1453(a), (b).

9. Citizenship of Plaintiff and putative class members. At all relevant times, Plaintiff was a citizen of California. *See* Ex. 1 [Complaint], ¶ 5. Members of the proposed class, who by definition are or were employed in California, are presumed to be primarily citizens of the State of California. *See* Ex. 1 [Complaint], ¶¶ 6, 23, 33; *See, e.g., Lew v Moss*, 797 F.2d 747, 750 (9th Cir. 1986) ("place of employment" is an important factor weighing in favor of citizenship). Plaintiff was employed by CareFusion. *See* Declaration of Lana Aiello ("Aiello Decl."), ¶ 3.

10. Citizenship of Defendant. Under 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). The Supreme Court established the proper test for determining a corporation's principal place of business for diversity jurisdiction. *Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010). The "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Id.* at p. 1184. It is the place where the corporation "maintains its headquarters – provided that the headquarters is the actual center of direction, control and coordination." *Id.*

11. At all relevant times, BD has been a citizen of New Jersey. *See* Declaration of Jaime Serrano ("Serrano Decl."), ¶ 3. BD was organized under the laws of the State of New Jersey and its principal place of business is in New Jersey. *Id.*

BD's principal address, along with its corporate executives, are in New Jersey. *Id.*

12. At all relevant times, CareFusion was organized under the laws of the State of Delaware. *See* Aiello Decl., ¶ 2. CareFusion's officers reside outside of California and are primarily located in New Jersey. *Id.*

**B. <u>CAFA's Class Size Requirement Is Satisfied</u>**

13. Plaintiff brings this Action under California Code of Civil Procedure § 382 on behalf of numerous subclasses (collectively defined as the "Class"), including people that fall within this category:

> All individuals who are or previously were employed by DEFENDANTS in California and classified as non-exempt employees…at any time between during [sic] the period beginning four (4) years prior to the filing of the complaint and ending on the date as determined by the Court.

Ex. 1, ¶ 6.

14. From May 20, 2021 through the date of this Notice of Removal, CareFusion has directly employed approximately 999 putative class members. Aiello Decl., ¶ 4. Thus, CAFA's size requirement of at least 100 members is satisfied.

**C. <u>C. CAFA's $5 Million Amount In Controversy Requirement Is Satisfied</u>**

15. CAFA authorizes the removal of class action cases in which the amount in controversy for all class members exceeds $5 million. 28 U.S.C. § 1332(d).

16. Under CAFA, the "District Court [must] determine whether it has jurisdiction by adding up the value of the claim of each person who falls within the definition of [a plaintiff's] proposed class and determine whether the resulting sum exceeds [$5 million]." *Standard Fire Insurance Co. v. Knowles*, 133 S.Ct. 1345, 1348 (2013). For removal, "[t]he court accepts the allegations in the complaint as true and assumes the jury will return a verdict in the plaintiff's favor on every claim." *Henry v. Cent. Freight Lines, Inc.*, 692 F. App'x 806s, 807 (9th Cir. 2017) (citing *Campbell v. Vitran Express, Inc.*, 471 F. App'x. 646, 648 (9th Cir. 2012).

17. Plaintiff seeks the recovery of meal and rest period premium pay, unpaid wages (including minimum wages, regular rate wages, overtime wages), itemized wage statement penalties, and waiting time penalties on behalf of herself and the putative class. *See* Ex. 1. The Complaint satisfies the $5 million threshold for CAFA Removal. *See* 28 U.S.C. § 1332(d).

**1. <u>Alleged Minimum Wage Violations</u>**

18. Plaintiff's Second Cause of Action alleges that Defendants did not pay employees for actual hours worked resulting in potential class members earning less than minimum wage rate. *See* Ex. 1 [Complaint], ¶¶ 59-72.

19. Labor Code Section 1194(a) provides: "Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit."

20. Defendants estimate CareFusion employed approximately 999 potential class members during the proposed class period. *See* Aiello Decl., ¶ 4. CareFusion calculated 163,697 as the potential total number of work weeks for these purported class members. *Id.*

21. Based on the above facts and allegations in Plaintiff's Complaint, Defendants calculate that Plaintiff's claims for unpaid minimum wages are **$2,701,000.50** (16.50 an hour[1] x 1 hour x 163,697 workweeks). The computation of the amount in controversy is based on a conservative calculation that the minimum 999 putative class members worked at least 163,697 weeks, that each putative class

[1] California's minimum wage as of January 1, 2025 is $16.50 an hour. *See* Department of Industrial Relations, Minimum Wage FAQ Minimum Wage Frequently Asked Questions.

member earned an hourly rate of no less than $16.50 per hour, and that each putative class member incurred one (1) hour of unpaid minimum wage for every week of work.

22. An estimate of one hour of unpaid wages for every workweek has been accepted by the federal courts as a reasonable and conservative figure. *See Kincaid v. Educ. Credit Mgmt. Corp.*, 2022 WL 597158, at *3 (E.D. Cal. Feb. 28, 2022) (finding assumption of 1 hour of unpaid minimum wage per week was reasonable given the Complaint's lack of specific allegations to the contrary); *Kastler v. Oh My Green, Inc.*, 2019 WL 5536198, at *4 (N.D. Cal. Oct. 25, 2019) (stating that an assumption of 1 hour of unpaid minimum wage per week was a "conservative estimate routinely endorsed by courts in evaluating CAFA's amount in controversy requirement when plaintiff fails to include specific allegations"); *Soto v. Tech Packaging, Inc.*, 2019 WL 6492245, at *5 (finding reasonable Defendant's assumption that the class members were not compensated for one hour of minimum wages per work week where plaintiff alleged a "pattern and practice" of wage abuse); *Soto v. Greif Packaging*, LLC, 2018 WL 1224425, at *3 (C.D. Cal. Mar. 8, 2018) (finding allegation that defendant failed to pay minimum wage for all hours worked on a "consistent and regular basis" sufficient to support estimate of one hour per week per class member); *Patel v. Nike Retail Servs.*, Inc., 58 F. Supp. 3d 1032, 1042 (N.D. Cal. 2014) (approving one hour of unpaid wages "to be appropriately considered toward the amount in controversy"). This is especially the case where, as here, the Plaintiff fails to provide specific allegations about the frequency of which she worked without receiving the requisite compensation. *See Byrd v. Masonite Corp.*, 2016 WL 2593912, at *5 (C.D. Cal. May 5, 2016).

**2. <u>Alleged Unpaid Overtime Wages</u>**

23. Plaintiff's Third Cause of Action alleges that Defendants did not pay overtime to employees in the proper amounts and at the proper rate. *See* Ex. 1 [Complaint], ¶¶ 74-89. California Labor Code § 510 states that any work over 8 hours in a workday or 40 hours in a workweek shall be compensated at one and one-half

times an employee's regular rate of pay. Any work a non-exempt employee conducts over 12 hours in one day or 8 hours per day on the seventh consecutive day of work shall be compensated at the rate of no less than twice the regular rate of pay for an employee.

24. Defendants calculate that the average hourly rate of the potential class members was $29.36 per hour. *See* Aiello Decl. ¶ 4. Based on the above facts and allegations in Plaintiff's Complaint, Defendants calculate Plaintiff's claims for unpaid overtime wages to be **$10,813,823.82** (($29.36 per hour x 1.5 hourly rate) x 1.5 hours of overtime x 163,697 workweeks). The computation of the amount in controversy is based on a conservative calculation that the minimum 999 putative class members worked at least 163,697 weeks, that each putative class member earned an average hourly rate of $29.36, and that each putative class member incurred 1.5 hours of unpaid overtime wage for every week of work.

25. Courts have found it reasonable to assume 1.5 hours or more of unpaid overtime per week based on allegations like those present in Plaintiff's Complaint. *See, e.g., Andrade v. Beacon Sales Acquisition, Inc.*, 2019 WL 4855997 (C.D. Cal. Oct. 1, 2019) (one hour off-the-clock work and two hours of uncompensated overtime per workweek was reasonable based on allegations that the violations occurred "as matters of policy and/or practice"); *Cavada v. Inter-Continental Hotels Group, Inc.*, 2019 WL 5677846 (S.D. Cal. Nov. 1, 2019) (one hour off-the-clock work and two hours of uncompensated overtime per workweek was reasonable complaint alleged "systematic scheme" to refuse to pay overtime and uniform policy and practice that did not accurately record overtime worked); *Torrez v. Freedom Mortgage, Corp.*, 2017 WL 2713400, at *4 (C.D. Cal. Jun. 22, 2017) (finding that assumption of three hours of unpaid overtime per week was reasonable where complaint had generic allegations of a failure to pay for all regular and/or overtime wages); *Rivera v. Agreserves, Inc.*, 2023 WL 5202575 (Aug. 14, 2023) (assumption of 1.5 hours of unpaid overtime wages appropriate where complaint alleged that putative class members consistently worked

over eight hours per day but were not paid for their overtime hours'"); *Stanley v. Distrib. Alts., Inc.*, 2017 WL 6209822, at *2 (C.D. Cal. Dec. 7, 2017) (holding violation rate of "two hours of overtime" reasonable where the complaint alleged a "'pattern and practice' of wage and hour violations" but "no guidance as to the frequency of these violations" and there was "no competing evidence that would suggest lower violation rates").

**3. <u>Alleged Meal Break Violations</u>**

26. Plaintiff's Fourth Cause of Action alleges that employees were denied the opportunity to take timely meal breaks and that they were not paid the meal penalty premium as required by law. Ex. 1 [Complaint], ¶¶ 91-93.

27. Defendants calculate Plaintiff's claims for meal period violations to be at least **$4,806,143,92** ($29.36 per hour x 1 meal premium per week x 163,697 work weeks). This computation is based on corporate business records that show putative class members have worked at least 163,697 workweeks since May 20, 2021, at an average regular rate of $29.36 per hour, and the assumption that each putative class member incurred one meal period violation for every workweek.

28. When determining the amount placed in controversy by a plaintiff's allegations regarding a common practice of meal or rest period violations like those alleged by Plaintiff, an estimate of one meal period violation for every week of work is both reasonable and conservative. Ex. 1 [Complaint], ¶¶ 91-93; *See, e.g., Campbell v. Vitran Exp., Inc.*, 471 Fed. Appx. 646, 649 (9th Cir. 2012); *Mackall v. Healthsource Glob. Staffing, Inc.*, 2016 WL 4579099, at *5 (N.D. Cal. Sept. 2, 2016) (acknowledging that multiple decisions from the Northern District of California have recognized assumptions of one missed meal period per week as "reasonable in light of policy and practice allegations and allegations that defendants' 'regularly' denied class member breaks."); *Unutoa v. Interstate Hotels & Resorts, Inc.*, 2015 WL 898512, at *3 (C.D. Cal. Mar. 3, 2015) (approving of defendant's assumption that class members missed one required meal period per week).

4. **<u>Alleged Rest Break Violations</u>**

29. In Plaintiff's Fifth Cause of Action, Plaintiff alleges that the Defendants did not provide rest periods to Plaintiff and the putative class members within the required time and did not pay putative class members for breaks they could not take. Ex. 1 [Complaint], ¶¶ 95-97.

30. Defendants calculate Plaintiff's claims for rest period violations to be at least **$4,806,143.92** ($29.36 per hour x 1 rest premium per week x 163,697 work weeks). This computation is based on corporate business records that show putative class members have worked at least 163,697 workweeks since May 20, 2021, and at an average regular rate of $29.36 per hour, and the assumption that each putative class member incurred one rest period violation for every workweek.

5. **<u>Alleged Wage Statement Penalties</u>**

31. Plaintiff's Sixth Cause of Action seeks penalties for alleged inaccurate wages statements under California Labor Code § 226. Ex. 1 [Complaint], ¶¶ 99-101. Plaintiff's wage statement claim is derivative of their allegations that Defendants had a policy and practice to deny putative class members the opportunity to take meal and rest periods and a policy and practice to not pay for off-the-clock work. The Complaint alleges that all wage statements were inaccurate for each pay period for every single putative class member, *i.e.*, a 100% violation rate.

32. Labor Code section 226 carries a one-year statute of limitations, making the liability period here span from May 20, 2024 to present (i.e., one year before the Complaint was filed). Cal. Code Civ. Proc. § 340(a); *Falk v. Children's Hospital Los Angeles*, 237 Cal.App.4th 1454, 1469 (2015).

33. From May 20, 2024 to present, Defendants employed at least 656 putative class members who received approximately 22,476 wage statements. Aiello Decl. ¶ 5.

34. An estimated 100% wage statement violation rate for purposes of removal is reasonable given the allegations in Plaintiff's Complaint. *See, e.g., Baker v. Propak Logistics, Inc.*, 2019 WL 4168998, at *4 (C.D. Cal. Sept. 3, 2019); *Mendoza*

*v. Nat'l Vision, Inc.* (2019) WL 2929745, at *6 (N.D. Cal. July 8, 2019) (approving of 100% wage statement violation rate); *Gipson v. Champion Home Builders, Inc.*, 2020 WL 4048503, at *8 (E.D. Cal. July 20, 2020) (100% assumed violation rate was reasonable).

35. Assuming a 100% violation rate, based on Plaintiff's allegations, the amount in controversy for this claim is at least **$1,123,800** (22,476 wage statements x $50.) This is an initial estimate and calculation.

36. If the maximum penalty could be imposed of $4,000 per employee, then this claim for non-compliant wage statements could reach as high as $2,624,000 ($4,000 x 656 putative class members).

**6. <u>Alleged Failure to Reimburse</u>**

37. Plaintiff's Seventh Cause of Action seeks alleges that employees were not reimbursed for necessary business expenses. Ex. 1 [Complaint], ¶¶ 103-105.

38. Courts in this district have generally approved defendants using a $20-$25 per month assumed reimbursement rate. *See, Vallejo v. Sterigenics U.S. LLC*, 2021 WL 2685348, at *6 (S.D. Cal. June 29, 2021) (approving $25 per month reimbursement rate for amount in controversy); *Shachno v. Marriott International, Inc.*, 2023 WL 316367, at *11 (S.D. Cal. Jan. 19, 2023) (approving $20 per month reimbursement rate for the amount in controversy); *Evers v. La-Z Boy Inc.*, 2022 WL 2966301 (S.D. Cal. July 27, 2022) (applying $24 per month for allegedly unreimbursed cell phone expenses).

39. Based on the above facts and allegations, Defendants calculate the amount in controversy for this claim is **$818,485** ($20 x (163,697 workweeks ÷ 4 weeks)).

**7. <u>Alleged Waiting Time Penalties</u>**

40. Plaintiff's Eighth Cause of Action seeks penalties under California Labor Code §§ 201-203 for failure to pay wages timely upon termination. Ex. 1 [Complaint], ¶¶ 107-113.

41. California Labor Code § 203 states that "[i]f an employer willfully fails to pay… any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." A three-year statutory period applies to Plaintiff's claim for waiting time penalties. *Pineda v. Bank of America, N.A.*, 50 Cal. 4th 1389, 1398 (2010).

42. From May 20, 2022 to the Notice of Removal, CareFusion separated employment with approximately 208 non-exempt employees in California. Aiello Decl., ¶ 6. Their average hourly rate for this population was approximately $29.41. *Id*. This equals an average daily rate of approximately $235.28. Thus, the amount in controversy for waiting time penalties is at least **$1,468,147.20** ($29.41 per hour x 8 hours x 30 days x 208 putative class members).

**8. <u>Attorney's Fees</u>**

43. Based on the above claims, Defendants have shown at least **$26,537,544.36** ($2,701,000.50 + $10,813,823.82 + $4,806,143.92+ $4,806,143.92 + $1,123,800 + $818,485+ $1,468,147.20) is in controversy based on Plaintiff's allegations.

44. Plaintiff also seeks attorney fees. Ex. 1 [Complaint], Prayer for Relief, ¶ 4(c). In the Ninth Circuit, 25% of the total recovery is the "benchmark level" for reasonable attorney fees in class action cases. *Garibay v. Archstone Communities LLC*, 539 F. App'x 763, 764 (9th Cir. 2013). Using this 25% benchmark, courts have included attorney fees for 25% of the total recovery in determining the amount in controversy under CAFA. *Id*. (contemplating inclusion of 25% of total recovery in attorney fees under CAFA); *Rwomwijhu v. SMX, LLC*, No. CV1608105ABPJWX, 2017 WL 1243131, at *6 (C.D. Cal. Mar. 3, 2017) (including fees in calculation, noting that "courts in the Ninth Circuit, including this one, have allowed an estimated fee award of 25% of a plaintiff's damages in calculating the amount in controversy

under CAFA"); *Sanchez v. Russell Sigler, Inc.*, No. CV1501350ABPLAX, 2015 WL 12765359, at *7 (C.D. Cal. Apr. 28, 2015) (same). Here, a 25% recovery for attorney's fees would be **$6,634,386.09, for a total amount in controversy of $33,171,930.45.**

### 9. Summary

45. Even excluding Plaintiff's other claims for unfair business practices and PAGA penalties, Plaintiff's allegations easily satisfy the $5 million threshold for removal under CAFA. Even the most conservative of estimated recoveries for Plaintiff's additional claims pushes the amount in controversy well beyond the $5 million threshold.

## V. DEFENDANTS HAVE SATISIFED THE REMAINING REMOVAL REQUIREMENTS

46. Under 28 U.S.C. §1446(a), this Notice of Removal is accompanied by the Declarations of Lana Aiello, Jaime Serrano, and Eric Fox, and Exhibits 1-3, which are a copy of all processes, pleadings, and orders provided to Defendants, Corporate Disclosure Statements for both Defendants, and Notice to Interested Parties.

47. As required by 28 U.S.C. §1446(b) and Federal Rule of Civil Procedure 6(a), this Notice of Removal was filed timely as it was served within 30 days of service, which is the initial pleading setting forth the claim on which the action is based. (Fox Decl. ¶ 2.)

48. As required by 28 U.S.C. §1446(d), Defendants provided Notice of Removal to Plaintiff through her attorneys of record.

49. As required by 28 U.S.C. §1446(d), a copy of the original Notice of Removal will be filed with the Superior Court of the State of California, for San Diego County.

50. If this Court has a question regarding the propriety of this Notice of Removal, Defendants request it issue an Order to Show Cause so it may have an opportunity to more fully brief the grounds for this removal.

/ / /

## VI. CONCLUSION

51. For these reasons, Defendants remove the above-entitled action to the United States District Court for the Southern District of California.

DATED: July 2, 2025

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: */s/ Eric M. Fox*
Spencer C. Skeen
Eric M. Fox
Attorneys for Defendants CAREFUSION RESOURCES, LLC and BECTON, DICKINSON AND COMPANY